```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                  FORT MYERS DIVISION
```

STEPHEN V. MARZELLA,

                Plaintiff,

vs.                              Case No.  2:05-cv-591-FtM-29SPC

EMBARQ FLORIDA, INC.,

                Defendant.
_____

**OPINION AND ORDER**

This matter comes before the Court on defendant's Motion for Summary Final Judgment (Doc. #32), filed on June 1, 2007. Plaintiff filed a Memorandum of Law in Opposition (Doc. #45) on July 13, 2007.  For the reasons set forth below, the motion will be granted.

**I.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  A fact is "material" if it may affect the outcome of the suit under governing law.  Id.  The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it

believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. Northern Crossarm Co., 357 F.3d 1256, 1259-60 (11th Cir. 2004).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999). If there is a conflict in the evidence, the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003).

**II.**

Plaintiff Stephen V. Marzella (Marzella or plaintiff) filed an Amended Complaint (Doc. #7) against Embarq Florida, Inc. (Embarq or defendant) seeking relief under the Family and Medical Leave Act of 1993 (FMLA) for interference with and retaliation for the exercise of his statutory rights. The parties have agreed to dismiss the interference component of the claim, leaving only the retaliation aspect.

The material facts are not in dispute, and have been set forth in some detail by the parties. (Docs. #32, pp. 2-10; #45, pp. 2-13.) The Court will therefore summarize only those facts essential to an understanding of the issue, as viewed from plaintiff's perspective.

Plaintiff began his employment with Embarq's predecessor on or about February 20, 1979, as a Customer Service Technician and consistently received positive performance violations. Plaintiff applied for and received FMLA leave from April 28, 2003 through May 5, 2003 for a back condition without incident. On or before November 5, 2003, plaintiff was diagnosed with Irritable Bowel Syndrome (IBS), and needed time off work for physician testing and evaluation on November 19 through 21, 2003, and December 9, 2003. Plaintiff told his immediate supervisors, Diane McKelvey (McKelvey) and Earl Elwood (Elwood), approximately two weeks prior to the scheduled medical testing, and Embarq approved the leave.

On November 25, 2003, Elwood called plaintiff during working hours to verify his work location, and became convinced that plaintiff lied when responding to his inquiry. Plaintiff and Elwood ended up meeting on the side of the road, where a rather heated discussion occurred. Elwood remained convinced that plaintiff had lied, threatened plaintiff with termination of his employment, and demanded a doctor's note for the November 19-21, 2003, FMLA leave. Plaintiff provided the doctor's note on November

28, 2003, but Elwood stated it was unacceptable, again threatened termination, and told plaintiff he was not eligible for FMLA leave. After meeting with plaintiff and a union steward on December 12, 2003, Elwood recommended that plaintiff be terminated. Elwood accused plaintiff of lying, cheating, having spent excessive time in the Central Office, and not being on his lunch hour on November 25, 2003, when they spoke on the phone despite the time sheet reflecting the lunch hour. (Doc. #45, p. 7; Doc. #37, p. 213.)

Upon receiving a written report (Doc. #37-5) and e-mail (Doc. #37-6) dated December 4, 2003, from Elwood regarding the November 25, 2003, incident, Mary Resto (Resto), an Employee Relations Specialist, pulled together all of plaintiff's disciplinary and "coaching" history. Only two coaching incidents were reported in 2003. (Doc. #34-4, p. 12.) On December 15, 2003, Resto sent an e-mail to Colby F. Gilson (Gilson), Manager of Human Resources, for guidance regarding termination of plaintiff's employment with attachments from his Recognition and Development Log. (Doc. #37-13.) The e-mails referred to the allegations that plaintiff had lied to Elwood regarding his whereabouts on November 25, 2003, but did not refer to any of plaintiff's FMLA activity. (Id.) Gilson responded on December 16, 2003, agreeing that termination was appropriate and directing that Elwood prepare a formal request. (Id.) On December 18, 2003, Elwood submitted a memorandum recommending termination because plaintiff failed to clear his tasks, lied to his supervisor about his location, and failed to

-4-

show the appropriate travel time for the day. (Doc. #37-7.) On December 19, 2003, Louis Carrion (Carrion), Vice President for the area, approved the memorandum request and instructed that the termination occur on the same day. (Doc. #35-3, Exh. 2.) After final approval from Embarq's legal department, plaintiff was terminated on December 19, 2003.

After the termination, Local 199 of the International Brotherhood of Electrical Workers filed a grievance on behalf of plaintiff based on the Union's Collective Bargaining Agreement, stating that the termination was not for just cause and was in violation of the Agreement. The matter was settled once a time discrepancy was discovered showing that plaintiff was in fact at lunch when Elwood called him on the cellular phone. Plaintiff was reinstated to employment with Embarq on January 25, 2005. The Letter of Agreement reached provides as follows:

> Steve Marzella will return to work as a Service Technician reporting to the Davis Boulevard Work Center effective January 25, 2005 reporting to Tish Tye. Steve's pay will be $22.59 per hour and his seniority service date, classification date and department date will remain 2/20/1979.
>
> Steve will not be eligible for back pay for the period of absence from his non-paid leave start date of 12/19/2003 up to his return date. This period of absence will not be included in his pension calculation. Steve will be granted five weeks of vacation and five personal holidays based on his years of service. Selection of 2005 vacation will be based on availability as of 1/24/2005.
>
> This period of absence will be considered as a non-paid suspension. Steve's employment history will reflect that the termination was reduced to a final written warning which deactivated on 12/19/2004.

> This offer is being made on a non-precedent setting basis without prejudice.

(Doc. #33-5, Exh. 4.)  Plaintiff continues to work for Embarq.

### III.

The Family and Medical Leave Act of 1993 (FMLA) provides eligible employees with up to twelve weeks of unpaid leave annually if a serious health condition makes the employee unable to perform the functions of his or her position as an employee.  29 U.S.C. § 2612(a)(1)(D).  The FMLA also creates a private right of action for equitable relief and money damages for employer violations.  29 U.S.C. § 2615(a)(1), 2617(a).  The Eleventh Circuit has recognized that the FMLA creates two types of claims: interference claims, in which an employee asserts that his or her employer denied or otherwise interfered with substantive rights under the FMLA; and retaliation claims, in which an employee asserts that the employer discriminated against him because he or she engaged in activity protected by the FMLA.  <u>Hurlbert v. St. Mary's Health Care Sys., Inc.</u>, 439 F.3d 1286, 1293 (11th Cir. 2006); <u>Strickland v. Water Works and Sewer Bd.</u>, 239 F.3d 1199, 1206 (11th Cir. 2001).

In the absence of direct evidence, the Court applies the burden-shifting framework in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  <u>Hurlbert</u>, 439 F.3d at 1297.  To establish a *prima facie* case of retaliation, plaintiff must demonstrate:  (1) that he engaged in statutorily protected activity under the FMLA; (2) that he experienced an adverse employment action; and (3) that there is

a causal connection between the protected activity and the adverse employment action. Hurlbert, 439 F.3d at 1297; Wascura v. City of S. Miami, 257 F.3d 1238, 1248 (11th Cir. 2001)(citing Parris v. Miami Herald Pub. Co, 216 F.3d 1298, 1301 (11th Cir. 2000)). If plaintiff can establish a *prima facie* case, the burden shifts to the defendant to articulate a legitimate reason for the adverse action. If defendant is able to do so, plaintiff must show that defendant's proffered reason for the adverse action was pretextual. Smith v. BellSouth Telecomms., Inc., 273 F.3d 1303, 1314 (11th Cir. 2001).

Unlike an interference claim, where intent to deny a FMLA benefit is not an element of the cause of action, Hurlbert, 439 F.3d at 1293-94, to establish a claim for retaliation plaintiff must demonstrate intentional discrimination against him for having exercised a right under the FMLA. Strickland, 239 F.3d at 1207. "In other words, a plaintiff bringing a retaliation claim faces the increased burden of showing that his employer's actions were motivated by an impermissible retaliatory or discriminatory animus." Id. (citation omitted).

Defendant does not dispute that plaintiff engaged in statutorily protected activity under the FMLA and that he experienced an adverse employment action (termination). Defendant argues, however, that no causal connection exists between the two because his termination was based on insubordination on the job and because he returned to work with no consequences after each period

of leave pursuant to the FMLA. Plaintiff responds that the close proximity of the FMLA leave and his termination establish a causal connection, and plaintiff's position that he did not lie to Elwood creates an issue of fact which defeats summary judgment.

"Close temporal proximity between protected conduct and an adverse employment action is generally 'sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection.'" Hurlbert, 439 F.3d at 1298 (quoting Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000)). Not all temporal proximity is close enough, however, to create an issue of material fact as to causal connection. The Eleventh Circuit has held that three and one-half months and three months, without other evidence of causation, is insufficient to create a jury issue on causation. Wascura, 257 F.3d at 1248; Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir. 2006). Nine days, however, appears to be a sufficiently close time period. Strickland, 239 F.3d at 1207.

In this case, the first FMLA leave was granted in April 2003, and is not in close temporal proximity to plaintiff's December 19, 2003 termination. Plaintiff's request for leave in early November, 2003, was approximately six weeks before the termination, and his actual leave periods were about four weeks before the termination and ten days before the termination. The Court need not resolve the question of whether these are close enough in time because an exception to the rule is applicable here.

An exception to the rule that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection exists where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct. <u>Hurlbert</u>, 439 F.3d at 1298 (quoting <u>Brungart</u>, 231 F.3d at 799); <u>Strickland</u>, 239 F.3d at 1208 n.10 (citing <u>Brungart</u>, at 799). "That requirement rests upon common sense. A decision maker cannot have been motivated to retaliate by something unknown to him." <u>Brungart</u>, 231 F.3d at 799.

Although Elwood and Resto became aware that plaintiff availed himself of FMLA rights prior to termination (Doc. #37, p. 154-55, 158), it is undisputed that they were not the decision makers as to the termination (Doc. #37, p. 207). It is also undisputed that the decision makers were unaware of plaintiff's FMLA leave activity. The Affidavit of Colby F. Gilson, Manager of Human Resources in November 2003, provides:

> Indeed, at the time of [plaintiff's] termination, I was not even aware that he had asked for or taken FMLA leave. Moreover, I am not aware of anyone at Embarq taking an action against Mr. Marzella because he took FMLA leave or otherwise exercised rights under the FMLA.

(Doc. #33, p. 6.) The Affidavit of Louis Carrion, Vice President of Customer Service Operations in November 2003, provides in relevant part:

> I deny that Mr. Marzella's exercise of any rights he may have had under the FMLA had anything to do with my decision regarding his termination. In fact, at the time

>   of his termination, I was not even aware that he had asked for or taken FMLA leave. Moreover, I am not aware of anyone at Embarq taking an action against Mr. Marzella because he took FMLA leave or otherwise exercised rights under the FMLA.

(Doc. #35, ¶ 10.)

Plaintiff has not established any facts which suggest the contrary. Plaintiff merely states: "Gilson has acknowledged that he relied on Elwood for information necessary to determine whether or not to terminate Marzella. Therefore, there is a question of fact as to what information Gilson had when he approved Marzella's termination." (Doc. #45, p. 15.) While plaintiff can certainly establish a decision maker's awareness by circumstantial evidence, Brungart, 231 F.3d at 799, he has not done so in this case. None of the written documentation in this case that went to Gilson made reference to plaintiff's FMLA activity; no deposition testimony suggests that Gilson was aware of the activity; and Gilson has denied being aware of the activity.

Plaintiff also states: "Similarly, given that Elwood went through great lengths to request a doctor's note that was not even required creates a fact question as to whether Elwood was aware of any protected activity by Marzella." (Doc. #45, p. 15.) It is clear that Elwood *was* aware of plaintiff's FMLA activity. However, it is also undisputed that Elwood was not the decision maker in this case.

The fact that Enbarq was mistaken in its reason for terminating plaintiff does not create a fact issue as to a FMLA

violation.  "[A]n employer may fire an employee based upon erroneous facts, as long as it is not for a discriminatory reason." Daugherty v. Mikart, Inc., 205 Fed. Appx. 826, 827 (11th Cir. 2006)(citing Abel v. Dubberly, 210 F.3d 1334, 1339 n.5 (11th Cir. 2000)).  Because the record establishes that the decision makers as to termination were not aware of plaintiff's FMLA activity, plaintiff cannot establish the causal connection requirement of his retaliation claim.  Accordingly, summary judgment will be entered in favor of defendant.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

Defendant's Motion for Summary Final Judgment (Doc. #32) is **GRANTED** as to the retaliation claim and **DENIED** as moot as to the interference claim based on the voluntary dismissal.  The Clerk shall enter judgment in favor of defendant and against plaintiff, terminate all pending motions and deadlines as moot, and close the case.

**DONE AND ORDERED** at Fort Myers, Florida, this __23rd__ day of July, 2007.

JOHN E. STEELE
United States District Judge


Copies:
Counsel of record

-11-